**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **NEXSTAR MEDIA GROUP, INC., DENVER HUB**,<br><br>*Plaintiff*,<br><br>v.<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, CRYSTAL CAREY, in her official capacity as General Counsel of the National Labor Relations Board, JENNIFER ABRUZZO, in her official capacity as Former General Counsel of the National Labor Relations Board, WILLIAM B. COWAN, in his official capacity as Former Acting General Counsel of the National Labor Relations Board, MARVIN E. KAPLAN, in his former official capacity as Chairperson of the National Labor Relations Board, DAVID M. PROUTY, in his official capacity as Board Member, SCOTT MAYER, in his official capacity as Board Member, JAMES MURPHY, in his official capacity as Board Member, GWYNNE A. WILCOX, in her former official capacity as Board Member, MATTHEW S. LOMAX, in his official capacity as Regional Director for Region 27 of the National Labor Relations Board, JOSE R. ROJAS, in in his official capacity as Field Attorney for Region 27 of the National Labor Relations Board, and JOHN/JANE DOES 1-10, in their capacity as Administrative Law Judges**,<br><br>*Defendants*. | *Electronically Filed*<br><br>Civil Action No.: |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Nexstar Media Group, Inc. Denver Hub, ("Nexstar"), brings this action against defendants National Labor Relations Board ("Board" or "NLRB"), NLRB General Counsel

Crystal Carey ("Carey"), Former General Counsel Jennifer Abruzzo ("Abruzzo"), Former Acting General Counsel William B. Cowan ("Cowan"), former NLRB Chairperson Marvin E. Kaplan ("Kaplan"), Board Member David M. Prouty ("Prouty"), Board Member James Murphy ("Murphy"), Board Member Scott Mayer (Prouty, Mayer, collectively, "Board Members"), Regional Director for Region 27 of the NLRB Matthew S. Lomax ("Lomax"), Field Attorney for Region 27 of the NLRB Jose R. Rojas ("Rojas"),and Administrative Law Judge(s)("ALJ") John/Jane Doe(s) ("Doe") (collectively, "Defendants"), for declaratory and injunctive relief and states as follows:

**INTRODUCTION**

1. This action stems from an attempt by Defendants to subject Nexstar to an administrative proceeding, *Nexstar Media Inc. Denver Hub* NLRB Cases No. 27-CA-340984, 27-CA-340990, and 27-CA-361721, in which legal remedies are sought without the benefit of a trial by jury.

2. Defendants' actions unequivocally violate the Seventh Amendment of the United States Constitution.

3. This action further stems from the unconstitutional nature of 29 *U.S.C.* § 153(a), which establishes an unlawful protection against removal by the President. *Space Exploration Techs. Corp.* ("*SpaceX") v. NLRB*, 741 F. Supp. 3d 630, 636-637 (W.D. Tex. 2024); *see Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (*citing* U.S. Const. art. II, § 1, cl. 1) ("Because the Constitution vests executive power in the President…he may remove without cause executive officers who exercise that power on his behalf, subject to narrow limitations").

4. This action further stems from the Board's use of a constitutionally defective administrative process created by removal protections for the ALJ Defendants. *Aunt Bertha v.*

*NLRB*, No. 24-0798, 2024 WL 4202383, at *2 (N.D. Tex. Sep. 16, 2024)[1] (*citing Jarkesy v.* SEC, 34 F.4th 446 (5th Cir. 2022), *aff'd on other* grounds, 603 U.S. 109 (2024); *see further Energy Transfer, LP v. NLRB*, 742 F. Supp. 755, 759 (S.D. Tex. 2024); *see Harris v. Bessent*, 160 F.4th 1235, 1237 (D.C. Cir. 2025) ("we hold that the President permissibly removed…[an Administrative Law Judge]").

5. The foregoing actions of Defendants - - subjecting Nexstar to unconstitutional proceedings - - are *per se* irreparable harm. *See id.* at *3 (*quoting Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023).

**JURISDICTION AND VENUE**

6. This action arises under the Constitution and laws of the United States of America. This Court has federal question jurisdiction pursuant to 28 *U.S.C.* § 1331 because of fundamental questions of the Board's ability to seek legal remedies without a trial by jury violates the Seventh Amendment of the United States Constitution, as well as the unconstitutional structure of the Board and its proceedings. *Jarkesy*, 603 U.S. at 121-125.

7. This Court also has federal question jurisdiction pursuant to 28 *U.S.C.* § 1331 because Nexstar alleges aspects of the NLRB's structure violate the Constitution. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023).

8. This Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 *U.S.C.* §§ 2201-2202, the Administrative Procedure Act, 5 *U.S.C.* §§ 701-706, *Fed. R. Civ. P.* 65, and this Court's inherent equitable powers.

---

[1] Any unpublished authority referred to in this Complaint has been submitted as an appendix for the convenience of the Court.

9. Venue is proper in this district under 28 *U.S.C.* § 1391(e)(1). Defendants are officers of an agency of the United States acting in their official capacity. Plaintiff is a resident of Texas and its headquarters is located at 545 E. John Carpenter Freeway, Suite 700 Irving, Texas 75062.

10. The administrative complaint alleges an unfair labor practice relating to the conditions of employment of Nexstar employees J.C. and C.B.[2] at its Denver Hub.

**PARTIES**

11. Nexstar is a leading diversified media company that produces and distributes engaging local and national news, sports and entertainment content across its television and digital platforms and owns America's largest broadcasting group comprised of top network affiliates, with 200 owned or partner stations in 116 U.S. markets reaching 220 million people.

12. Nexstar is incorporated in Delaware, headquartered in Texas, and operates nationwide.

13. Defendant National Labor Relations Board ("NLRB" or "the Board") is an administrative agency of the United States, headquartered at 1015 Half Street SE, Washington, D.C. 20570-001. The National Labor Relations Act ("NLRA"), 29 *U.S.C.* § 160, empowers the NLRB to "prevent any person from engaging in any unfair labor practice."

14. Region 27 of the NLRB is a Field Office of the NLRB covering Colorado, Utah, Wyoming, southern Idaho, and eastern Montana and is headquartered at the Byron Rogers Federal Office Building, 1961 Stout Street, Suite 13-103, Denver, Colorado 80294.

---

[2] The identity of the Nexstar employee is irrelevant to adjudication of this matter. The employees are referred to by their initials.

15. Defendant Carey is General Counsel of the NLRB. She is sued in her official capacity.

16. Defendant Abruzzo is former General Counsel of the NLRB. She is sued in her official capacity.

17. Defendant Cowan is former Acting General Counsel of the NLRB. He is sued in his official capacity.

18. Defendant Kaplan is the former Chairperson of the NLRB. He is sued in her official capacity.

19. Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

20. Defendant Murphy is a Member of the NLRB. He is sued in her official capacity.

21. Defendant Mayer is a Member of the NLRB. He is sued in his official capacity.

22. Defendant Wilcox is a former Member of the NLRB. She is sued in her official capacity.

23. Defendant Lomax is Regional Director for Region 27 of the NLRB. He is sued in his official capacity.

24. Defendant Rojas is a Field Attorney for Region 27 of the NLRB. He is sued in his official capacity.

25. Defendant John/Jane Doe(s) is an Administrative Law Judge(s) of the NLRB assigned to preside over NLRB proceedings against Nexstar, whose identity has not yet been disclosed to Nexstar. John/Jane Doe(s) is sued in their official capacity.

## FACTS

**A. <u>Defendants' Policy and Practice of Violating the Constitution</u>**

26. On September 8, 2021, Defendant Abruzzo issued Memorandum GC 21-06 ("GC 21-06"), titled "Seeking Full Remedies."

27. GC 21-06, among other things, instructs the NLRB's Regions to "seek compensation ***for consequential damages, front pay,*** and liquidated backpay in a combined complaint and compliance specification" pursuant to 29 *U.S.C.* § 160(c). *(emphasis supplied)*. *See* 29 *U.S.C.* § 160(c) (the NLRB may only remedy unfair labor practices by "tak[ing]…affirmative action including reinstatement of employees…"); *but see Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024), *quoting United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 544 (1940) ("'[t]he interpretation of the meaning of statutes, as applied to justiciable controversies,' [is] 'exclusively a judicial function'")

28. On April 8, 2024, Defendant Abruzzo issued Memorandum GC 24-04 ("GC 24-04"), titled "Securing Full Remedies for All Victims of Unlawful Conduct."

29. In GC 24-04, Defendant Abruzzo commended the NLRB's regions for having "done an excellent job" in following the instructions of GC 21-06.

30. GC 24-04 expanded upon GC 21-06's use of the term "consequential damages" in relation to 29 *U.S.C.* § 160(c) as including:

> …[L]ost contributions to multi-employer pension funds; increases in the amounts of health insurance premiums, copays, deductibles, or co-insurance; loss of contributions already made to a retirement fund due to failure to complete a vesting period; lost anticipated earnings from already-accumulated retirement fund amounts; penalties imposed for early retirement fund withdrawal caused by cessation of participation; unreimbursed tuition payments, where that reimbursement was a part of the employee's compensation package; unreimbursed web development, marketing, and business insurance costs made by an employee on commission in order to

> increase sales of the employer's product; job search costs, such as reimbursement of mileage and gas costs, car/ride service payments, job search app costs, and resume printing fees; day care costs; specialty tool costs; late fees and/or related accrued interest on payments of rent, utilities, mortgage, tax, auto loans and credit cards; bank overdraft fees; utility disconnection/reconnection fees; reductions in earnings and/or penalties resulting from a discharge dipping into savings or retirement funds to replace income lost; costs associated with loans and credit card advances; relocation/moving expenses; legal representation costs in eviction proceedings; expenses resulting from a change in immigration status; and salting income.

*But see Loper Bright Enter.*, 144 S. Ct. at 2258.

31. On February 14, 2025, Defendant Cowan issued Memorandum GC 25-05 ("GC 25-05"), which rescinded GC 24-04 and rescinded GC 21-05 pending further guidance.

32. GC 25-05 did not, unfortunately, end flagrant violation of the Seventh Amendment by Defendants NLRB, Kaplan, and Prouty.

33. On March 21, 2025, Defendants NLRB, Kaplan, Prouty, and Wilcox issued a Decision and Order in *Dumbo 301 LLC*, Case No. 19-CA-322582.[3]

34. In *Dumbo 301 LLC*, said Defendants found:

> In accordance with our decision in *Thryv, Inc.*, 372 NLRB No. 22 (2022), *enf. denied on other grounds* 102 F.4th 727 (5th Cir. 2024), the Respondent shall also compensate Peach for any other direct and foreseeable pecuniary harms incurred as a result of the unlawful discharge…

*Id.* at *3.[4]

---

[3] A copy of this Decision and Order is included in the appendix filed herewith.

[4] It is respectfully requested that the Court take notice this is part of a pattern of conduct violating the Seventh Amendment and 29 *U.S.C.* § 160(c) by Defendants NLRB, Kaplan, McFerrna, Prouty, and Wilcox. This includes, without limitation: *The Boeing Co.*, 374 NLRB No. 20 (NLRB 2025); *S.W. Fla. Symphony Orchestra and Chorus Ass'n*, 373 NLRB No. 150 (NLRB 2024); *Kirin Transp., Inc.*, 374 NLRB No. 4 (NLRB 2024); *Starbucks Corp.*, 374 NLRB No. 8 (NLRB 2024); *Preferred Bldg. Servs., Inc.*, 374 NLRB No. 11 (NLRB 2024); *Rieth-Riley Constr.*

35. On or before March 21, 2025, said Defendants were on notice, or reasonably should have been on notice that *Thryv Inc.* violates the law. *See Thryv, Inc. v. NLRB*, 102 F.4th 727, 733 737 (5th Cir. 2024) (the Board's order "to make [employees] whole for all the losses incurred as a direct or foreseeable result of the layoffs" was a "novel, consequential-damages-like labor law remedy" and "draconian").

36. *Thryv, Inc.*, 372 NLRB No. 22 (NLRB 2022) purports to rely upon 29 *U.S.C.* § 160(c).

37. 29 *U.S.C.* § 160(c) establishes, in relevant part, only that:

> [The Board may] take such affirmative action including reinstatement of employees with or without backpay, as will effectuate the policies of this subchapter

38. On December 27, 2024, the United States Court of Appeals for the Third Circuit held:

> Backpay is based on what an employer has wrongfully withheld form an employee…
>
> …*Thryv* purports to grant broad compensatory relief. The Board ordered [the employer] to "compensate [the employees] for any direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against them…That [the employer] must "compensate" the employees for losses "incurred as a result" of [its] wrongdoing resembles an order to pay damages. Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. Here, the order is plainly meant to compensate [the employees] for losses resulting from [the employer's] unfair labor practices.
>
> Simply put, the Board's current order exceeds its authority under the NLRA. Thus, we vacate that portion of the order and remand for further proceedings. While the Board can certainly award some

---

*Co.*, 374 NLRB No. 13 (NLRB 2024); *List Indus., Inc.*, 373 NLRB No. 146 (NLRB 2024); *B & L, Inc.*, 373 NLRB No. 143 (NLRB 2024); *U.S. Postal Serv.*, 373 NLRB No. 138 (NLRB 2024); *Vt. Info. Processing, Inc.,* 373 NLRB No. 131 (NLRB 2024).

> monetary relief to the employees, that relief cannot exceed what the employer unlawfully withheld.

*NLRB v. Starbucks Corp.*, 125 F.4th 78, 96-97 (3d Cir. 2024) (quotations and internal citations omitted); *see further Int'l Union of Operating Eng'rs, Stationary Engr's, Loc. 39 v. NLRB*, 155 F.4th 1023, 1060 (9th Cir. 2025) (Bumatay, J., dissenting in part) ("[n]one of [the] express grants of power [in the NLRA] encompasses the award of foreseeable or consequential damages," "injunctive power doesn't authorize the award of…damages," "the power to authorize 'back pay' doesn't provide the Board with the ability to award consequential damages").

39. Defendants NLRB, Carey, Kaplan, Lomax, Mayer, Murphy, Prouty, and Rojas are now on further notice, or reasonably should now be on further notice that they may not seek monetary damages.

40. Specifically, on October 31, 2025, the United States Court of Appeals for the Fifth Circuit held:

> Undeterred, the NLRB suggests that it has "frequently" ordered monetary relief for a range of harms resulting from unfair labor practices. Its adverb seems exaggerated, but the Board points to a handful of cases in which [the] NLRB awarded monetary relief beyond lost wages…[F]ar from establishing a broad remedial power to grant monetary relief, these cases confirm that the NLRB is limited to providing equitable remedies that resemble backpay.
>
> ***
>
> The articulation of "foreseeable pecuniary harms" in *Thryv* is a form of legal damages. Legal damages may be compensatory or consequential. The Board's previous chairman, Lauren McFerran, admitted that consequential damages include "late fees on credit cards, or penalties if [an employee] must make early withdrawals from [their] retirement account in order to cover [their] living expenses." Because the Board's remedy aims to redress concrete losses to the Employees wholly apart from backpay and pay-related costs, it covers harm typically dealt with in tort suits for compensatory damages, and it operates as a compensatory damages order.

> The Board attempts to characterize the *Thryv* remedy as equitable, contending that make-whole relief is equitable because it is designed to restore the status quo. But that feature alone does not render the ordered relief equitable. While some forms of equitable relief attempt to restore the status quo, legal relief often has the same goal. If the Board were correct, then all instances of compensatory damages could qualify as equitable relief. In demonstrating no principled distinction between legal and equitable relief, the Board's result diverges sharply from the well-established principle that compensatory damages are a form of legal relief. The Board is not entitled to re-create established distinctions in the law, or in its governing statute, to serve parochial purposes…
>
> …Accordingly, we hold that the remedy the NLRB articulated in *Thryv* represents legal, not equitable, damages, and the NLRA affords a complainant only equitable damages. *Thryv* thus exceeds the NLRB's authority under the NLRA.

*Hiran Mgmt., Inc. v. NLRB*, 157 F.4th 719, 727, 728 (5th Cir. 2025) (internal citations omitted).[5]

---

[5] *See 3484, Inc. v. NLRB*, 137 F.4th 1093, 1125 (10th Cir. 2025) (Eid, J., concurring) (internal citations omitted):

> Taken together, all of this confirms what the NLRA's text suggest: the Board has no power to award compensatory damages. Instead, the Board's remedial authority is limited to equitable remedies authorized under the NLRA.
>
> For decades, the Board has abided that limitation. Then, in 2022, the Board changed course, for the first time holding that, in *all* cases "in which [its] standard remedy would include an order for make-whole relief," the Board would will now also "expressly order that the [employer] compensate affected employees for *all direct or foreseeable pecuniary harms*" suffered as a result of the employer's unfair labor practice.
>
> Unsurprisingly, the Board in *Thryv* insisted that its newly contemplated remedy is *not* a form of compensatory or consequential damages…The Board's statements are little more than window dressing. In reality, the Board's new remedy constitutes the very sort of tort-like damages that the Board is without power to award. *Thryv* itself makes this clear…[because it seeks a] new remedy encompass[ing] "out-of-pocket medical expenses, credit card debt, or other costs" that an employee may incur "simply in order to make ends meet," [and]…"interest and late

41. Defendants NLRB, Carey, Kaplan, Lomax, Mayer, Murphy, Prouty, and Rojas received a further reminder from the United States Court of Appeals for the Sixth Circuit on November 5, 2025:

> If [a *Thryv*] remedy sounds capacious, it should…[In *Thry*, the Board] arrived at that conclusion from both its reading of § 10(c)'s text and by pointing to handful of the Board's past cases that, in its view, awarded relief beyond just backpay and reinstatement. Having done so, the Board then created a "myriad of other possible examples" of direct or foreseeable harms: childcare costs, transportation expenses, credit card debt (including interest and late fees thereof), penalties on early withdrawals from retirement accounts, and the loss of a car or home from missed loan and mortgage payments…Not even contrary circuit court decisions would dissuade the Board from pursuing its refashioned approach, save for where binding precedent unquestionably forecloses it from doing so.
>
> ***
>
> [The Board's] policymaking rationale [in *Thryv*] for such remedies reflects the very crux of their unlawfulness: The Board is measuring monetary relief from the standpoint of the employee's lost, indicating its compensatory nature, rather than the employer's gain, which involves equitable considerations. In doing so, the Board has impermissibly shifted from equity to law…Put another way, while *Thryv* awards may help restore the status quo, they are also intended to punish wrongdoers and deter future misconduct. Just ask the Board. It characterizes the "design" of its awards as "advancing broader governmental policies," such as the "prohibition of anti union discrimination[] and interference with employees' concerted activities for mutual aid or protection." Yet achieving these aims would require the Board to punish employers acting unlawfully,

---

> fees on credit cards, or penalties if [an employee] must make early withdrawals from [their] retirement account in order to cover [their] living expenses"…[a]nd it even permits compensation for an employee's "loan or mortgage payments" as well as any "transportation or childcare costs."
>
> That list looks like something out of a torts treatise.

> landing its proceedings squarely within Seventh Amendment territory.

*NLRB v. Starbucks Corp.*, 159 F.4th 455, 467-468, 475 (6th Cir. 2025) (internal citations omitted).

42. A reminder was most recently provided by the United States Court of Appeals for the Fifth Circuit on February 2, 2026:

> The NLRB's examples of its new remedy also confirm that it is legal damages, not equitable relief. The Board believes it is permitted to award money damages for interest and late fees on credit cards, penalties if [employees] must make early withdrawals from [their] retirement account, the loss of [their] car or [their] home if [they are] unable to make loan or mortgage payments, increased transportation or childcare costs, medical expenses and credit debit. That list looks like something out of a torts treatise. Each of those examples is a quintessential basis for compensatory or consequential damages.
>
> The NLRB all but admits that its remedy is compensatory. Indeed, before creating the new remedy, the NLRB asked the parties whether it should…in all pending and future cases [award] consequential damages. It conveniently claims now that this remedy isn't consequential damages.
>
> Furthermore, the Board overreads *Jarkesy*. Under its interpretation, restoring the status quo has a capacious scope. The NLRB states that the consequential damages remedy is consistent with longstanding Supreme Court precedent because it is not designed to punish bad actors but instead to implement the statutory principles of rectifying the harms actually incurred by the unfair labor practices and restoring the victims to where they would have been but for the unlawful conduct. Under the proposed standard, there would be no reason for compensatory damages, the aforementioned classic example of legal relief, ever to be considered anything but equitable relief.
>
> That misuse of *Jarkesy* stems from a fundamental misunderstanding of the scope of the Supreme Court's opinion. In *Jarkesy*, the Court stated that the determination between whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to restore the status quo. The Board would have us understanding restoring the *status quo* to include compensatory and consequential damages, but the Court required not just that the policy be required to restore the *status quo*, but that it be designed *solely* to restore the status quo…

> …Lastly, contrary to the NLRB's assertion, its remedy is not equitable as incidental or intertwined with injunctive relief. The potential damages are limited only by the Board's imagination.
>
> Accordingly, the NLRB exceeded its authority by awarding these consequential damages…

*Harvard Maint., Inc. v. NLRB*, No. 24-60523, 2026 WL 266599, at *10-11 (5th Cir. Feb. 2, 2026) *(internal quotations and citations omitted)*.

43. Despite the foregoing, Defendants NLRB and Prouty have made clear their intent to openly flout any decision by any Court of Appeals that is inconsistent with their inexplicable desire to violate the Seventh Amendment and exceed the limited authority expressly granted by the NLRA. *Airgas USA, LLC*, 373 NLRB No. 102, at *1 n.2 (NLRB Sep. 18, 2024).

**B. Nexstar's Relationship with the Union**

44. On January 9, 2024, the National Association of Broadcast Employees and Technicians – Communication Workers of America, AFL-CIO (the "Union") filed RC Petition 27-RC-333280 ("RC Petition").

45. The RC Petition included a Notice of Representation Hearing, which set a hearing date for January 18, 2024.

46. Prior to the hearing, Defendant Lomax prohibited the Hearing Officer from hearing evidence as to the 29 *U.S.C.* 152(11) status of Ingest Leads.

47. The hearing proceeded on January 18, 2024.

48. There parties agreed via a stipulated election agreement to allow shift leads to vote "subject to challenge."

49. Ultimately, the election occurred on April 4, 2024 and the majority of voters who voted in the election voted in favor of unionization.

50. On April 11, 2024, Nexstar timely filed ten (10) objections, supported by an offer of proof, to the Union and Region's conduct in the leadup to the election.

51. Defendant Lomax refused to hold a hearing on Nexstar's objections.

52. On April 29, 2024, Defendant Lomax issued a Decision and Certification of Representative ("DCR").

53. On May 28, 2024, Nexstar filed a timely Request for Review ("RFR") of the DCR.

54. Fully aware that the RFR was pending and that it could impact the DCR, the Union nonetheless filed ULP No. 27-CA-342707 on May 21, 2024 alleging a refusal recognize the Union and bargain in good faith.

55. On July 17, 2024, while the RFR was pending, Defendant Lomax issued a Complaint for ULP 27-CA-342707 and an amended Complaint on August 28, 2024.

56. On September 13, 2024, while the RFR remained pending, Defendant Abruzzo, acting through her agents, moved for summary judgment on ULP 27-CA-3423707.

57. On September 19, 2024, the Defendants NLRB, McFerran, Prouty, and Wilcox summarily denied Nexstar's RFR.

58. On December 16, 2024, Defendants NLRB, McFerran, Prouty, and Wilcox issued a Decision and Order for ULP 27-CA-3423707, finding that Nexstar refused to bargain.

59. On December 20, 2024, Nexstar timely filed a Petition for Review of said Decision and Order in the United States Court of Appeals for the Fifth Circuit.

60. On December 19, 2025, the United States Court of Appeals for the Fifth Circuit Ordered and Adjudged that said Decision and Order was affirmed.

**C. The Union's Unfair Labor Practice Charges as to J.C., C.B., and Q.M.**

61. Employee J.C. was a Shift Lead, allowed to vote in the election subject to challenge.

62. On April 26, 2024, Nexstar terminated J.C.'s employment for violating Nexstar's Business Conduct and No-Harassment Policies stemming from J.C.'s repeated unprofessional conduct and insults to co-workers.

63. J.C.'s termination resulted from conduct including, among other things, complaints from his coworkers about workplace bullying and volatile responses when his coworkers stood up to his bullying.

64. Employee C.B. was an Operator.

65. On or around May 2, 2024, Nexstar terminated C.B.'s employment for violating Nexstar's Anti-Discrimination, Business Conduct, and No-Harassment policies.

66. C.B.'s termination - - the culmination of a pattern of poor performance beginning on or about January 17, 2023, insubordination enabled by J.C., and abusive behavior toward coworkers - - resulted from conduct including openly racist statements such as "all you Mexicans look the same" and/or "all you Mexican girls look the same" and/or that a coworker "looked Hispanic," emotional outbursts involving C.B. kicking Nexstar's property and punching walls in the workplace, and regularly shouting profanity in the workplace.

67. Employee was a Master Control Operator.

68. On March 5, 2025, Nexstar terminated Q.M.'s employment because of an escalating pattern of unprofessional behavior, inappropriate language, failure to adhere to workplace conduct standards, and a disregard for multiple changes to improve his conduct.

69. Q.M.'s termination - - the culmination of a pattern of poor performance and disrespectful and unprofessional behavior - - resulted from a written counseling for unprofessional and inappropriate behavior on June 6, 2024, a final written warning for the same conduct on June 25, 2024, unprofessional behavior on November 24, 2024 including statements that "I just want

an easy day where I can watch this came, chill, and relax" and "I'm sick of this s**t," and unprofessional behavior on February 23, 2025 including a statement that "I know you are just tryin' to start some s**t."

70. On April 26, 2024, the Union filed ULP No. 27-CA-340984, alleging, among other things, wrongful termination of J.C.

71. A first amended ULP was filed in 27-CA-340984 on June 4, 2024.

72. On April 26, 2024, the Union filed ULP No. 27-CA-340990, alleging, among other things, wrongful termination of C.B.

73. A first amended ULP was filed in 27-CA-340990 on June 4, 2024 and a second amended ULP was filed on April 2, 2025.

74. On March 11, 2025, the Union filed ULP No. 27-CA-361721, alleging, among other things, wrongful termination of Q.M.

75. A first amended ULP was filed in 27-CA-361721 on May 8, 2025 and a second amended ULP was filed on December 17, 2025.

**D. Defendant NLRB's Administrative Complaints**

76. On July 31, 2025, Defendant Lomax issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing ("Consolidated Complaint") for ULPs No. 27-CA-340984 & 27-CA-340990.

77. The Consolidated Complaint directs that "a hearing will be conducted before an administrative law judge of the National Labor Relations Board."

78. On August 21, 2025 Nexstar answered the administrative complaint, denying all allegations.

79. On January 31, 2026, Defendant Lomax issued an Amended Complaint ("Amended Complaint")

80. On January 13, 2026, Defendant Lomax issued the operative Second Amended Complaint ("SAC").

81. As a remedy, the SAC "seeks all other relief as may be just and proper to remedy the unfair labor practices alleged."

82. The SAC thus fails to limit the remedy sought to equitable relief - - the only form of relief Defendants may legally seek from Nexstar.

83. Defendant Rojas told Plaintiff that, regarding relief, Defendants sought to (1) make Jesse Cooper and Charles Burnett whole for any earnings and benefits lost due to their terminations, plus interest; (2) compensate them for any direct and foreseeable harms, including search-for-work expenses and interim employment expenses, suffered due to their terminations, plus interest; and (3) offer them reinstatement to their former jobs.

84. Seeking these damages wildly exceeds Defendants' authority under the NLRA and an ALJ potentially awarding such damages would violate Plaintiff's Constitutional right to a jury trial.

85. The SAC includes a Notice of Hearing, providing that "on Tuesday April 21, 2026, at 9:00 a.m., and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board, in the Byron Rogers Federal Office Building located at 1961 Stout Street, Suite 13-103, Hearing Room, in Denver, Colorado 80294.

86. Defendants have failed or refused to discontinue their effort to unlawfully seek legal remedies from Nexstar before this hearing.

87. Plaintiff specifically reserves the right to b ring additional causes of action against Defendants and to amend this Complaint as necessary.

**COUNT ONE**

**THE NLRB UNCONSTITUTIONALLY SEEKS LEGAL REMEDIES WITHOUT A JURY TRIAL IN VIOLATION OF THE SEVENTH AMENDMENT**

88. Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

89. The Seventh Amendment of the United States Constitution establishes:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

90. Upon information and belief, the "direct and foreseeable consequential damages" sought by the NLRB in the original administrative complaint exceed twenty dollars ($20.00).

91. Upon information and belief, the legal remedies sought by the NLRB in the amended administrative complaint exceed twenty dollars ($20.00).

92. As used in the Seventh Amendment, the term "common law" refers to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Parsons v. Bedford*, 28 U.S. 433, 446 (1830).

93. Accordingly, the Seventh Amendment's requirement of trial by jury "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form they may assume." *Id.* at 447.

94. The right to trial by jury in civil actions extends to causes of action created by Congress. *Tull v. United States*, 481 U.S. 412, 417 (1987); *see Beacon Theatres, Inc. v. Westover*,

359 U.S. 500, 501 (1959) ("[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care").

95. Defendant NLRB has no mechanism to conduct a trial by jury. *See* 29 *C.F.R.* § 101.10(a) ("[a] duly designated administrative law judge presides over the hearing").

96. Defendant NLRB Has no mechanism enabling a jury to act as factfinder and render an appropriate remedy, if any. *See* 29 *C.F.R.* § 101.11(a) ("[a]t the conclusion of the hearing the administrative law judge prepares a decision stating findings of fact and conclusions…and making recommendations as to action which should be taken in the case"); *see also* 29 *C.F.R.* § 101.16(a)-(c) (where a NLRB Regional Director issues a "backpay specification," an administrative law judge alone determines the remedy).

97. The Seventh Amendment extends to statutory claims if the claims are "legal in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989).

98. In determining whether a claim is legal, "the remedy is all but dispositive" and "money damages are the prototypical common law remedy" and "a monetary remedy is legal if it is designed to punish or deter the wrongdoer." *Sec. and Exh. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2129 (2024), *citing Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993), *further citing Tull*, 481 U.S. at 442 (1987).

99. Consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act." *Black's Law Dictionary* 416 (8th ed. 2004); *see U.S. v. Burke*, 504 U.S. 229, 239-240 (1992) (consequential damages, "(*e.g.*, a ruined credit rating)," recompense for "traditional harms associated with personal injury").

100. Seeking a remedy for "foreseeable pecuniary harms…is a form of legal damages" and "[l]egal damages may be compensatory or consequential." *Hiran Mgmt., Inc.*, 157 F.4th at 728.

101. Where, as here, "the Board's remedy aims to redress concrete losses to Employees wholly apart from backpay and pay-related costs, it covers harms typically dealt with in tor suits for compensatory damages, and it operates as a compensatory damages order." *Id.*

102. Here, "the remedy is all but dispositive" because "money damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129, *citing Mertens*, 508 U.S. at 255.

103. By seeking "consequential damages," the NLRB has exceeded its statutory authority to "take such affirmative action…[as] reinstatement of employees with or without back pay," and instead seeks to "punish culpable individuals" through a remedy designed to serve "either retributive or deterrent purposes" without the benefit of a trial by jury. *Jarkesy*, 144 S. Ct. at 2129; *Starbucks Corp.*, 159 F.4th at 478, 479, & 480("[t]he Board offers no reason to believe Congress licensed such an elaborate and unpredictable remedial scheme," "by awarding all direct or foreseeable pecuniary harms, the Board orders employers to reimburse a vast realm of tangentially related injuries," and "the Board seeks to grant monetary remedies at least partly designed to punish or deter employers acting unlawfully…[t]hat is the very definition of legal relief"); *Starbucks Corp.*, 125 F.4th at 97-98 (directing an employer to "compensate the employees for losses incurred as a result of [the employer's] wrongdoing resembles an order to pay damages" and "exceeds [the Board's authority under the NLRA"); *See* 29 *U.S.C.* § 160(c); *see further Jarkesy*, 144 S. Ct. at 2129, *internal citations omitted*;

104. There exist at common law causes of action for wrongful termination in violation of public policy, breach of employment contract, and for third-party beneficiaries of contracts.

*Robles v. Eminent Med. Ctr.*, 619 F. Supp. 3d 609, 639-641 (N.D. Tex. 2022) (addressing causes of action for breach of employment contract); *Jones v. Driver Pipeline*, No. 25-0121, 2025 WL 1908301, at *5 (N.D. Tex. Jul. 10, 2025) (*citing Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985)(discussing claim for wrongful termination in violation of public policy); *see Martinez v. City of Dallas, Tex.*, No. 16-2890, 2017 WL 4298134, at *3 n. 5 (N.D. Tex. Sep. 28, 2017) (same); *see Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 469 (1960) (promise of terms and conditions of employment in a collective bargaining agreement makes employees subject to agreement third-party beneficiaries of the agreement)

105. To prevent Nexstar from being subject to an unconstitutional remedy, this Court should stay or enjoin proceedings in for ULPs No. 27-CA-340984 and 27-CA-340990, and declare that the NLRB may not seek consequential damages without a trial by jury.

106. Nexstar has a strong likelihood of success on this claim. *Hiran Mgmt., Inc.*, 157 F.4th at 727-728; *Starbucks Corp.*, 159 F.4th at 467-468, 475; *Starbucks Corp.*, 125 F.4th at 96-97; *see further 3484, Inc.*, 137 F.4th at 1125; *accord Union of Operating Eng'rs, Stationary Engr's, Loc. 39*, 155 F.4th at 1060.

107. If the NLRB is not so enjoined, Nexstar will suffer irreparable harm. *SpaceX*, 741 F. Supp. 3d at 640 (*citing Axon Enters., Inc. v. Fed. Trade Comm'n*, 598 U.S 175, 191 (2023); *further citing Collins v. Yellen*, 594 U.S. 220, 259-260 (2021)); *Energy Transfer, LP v. NLRB*, 742 F. Supp. 3d. 755, 761 (S.D. Tex. 2024); *see Aunt Bertha*, 2024 WL 4202383, at *3.

108. If the NLRB, upon recommendation from the ALJ, issues a final order against Nexstar, the constitutional injury will likely be irremediable because Nexstar's constitutional claims are not about any order the NLRB may issue, they are about avoiding an illegitimate proceeding. *Id.*; *Energy Transfer, LP*, 742 F. Supp. 3d at 760-761 (*quoting Consumers' Rsch. v.*

*Consumer Prod. Safety Comm'n*, 91 F.4th 342, 349 (5th Cir. 2024) ("when a removal provision violates the separation of powers, the violation inflicts a here-and-now injury that can be remedied by a court" and the harm caused is "being compelled to participate in an invalid administrative process")

109. The harm to Nexstar, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. *Aunt Bertha*, 2024 WL 42023863, at *3 (*quoting Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) ("it is always in the public interest to prevent the violation of a party's constitutional rights;" *further citing BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (the government suffers no cognizable harm form stopping the perpetuation of an unlawful agency action and an injunction preventing an unlawful agency action does not disserve the public interest).

110. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights. *Id.*

## <u>COUNT TWO</u>

## BOARD MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

111. Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

112. Article II of the Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

113. Article II's Appointments Clause provides the President authority to appoint officers and inferior offices of the United States. U.S. Const. art. II, § 2.

114. The President has the power to appoint Board Members. The NLRB consists of five (5) Board Members.[6] With the advice and consent of the Senate, the President appoints these Board Members to staggered five-year terms. The President designates a Board member to serve as Chairperson. 29 *U.S.C.* § 153(a).

115. The NLRA limits the President's executive authority to remove Board Members because the President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*; *but see Wilcox*, 145 S. Ct at 1415 (*citing* U.S. Const. art. II, § 1, cl. 1) ("Because the Constitution vests the executive power in the President…he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by our precedents")

116. The NLRA unconstitutionally limits the President's power to remove Board Members to "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 *U.S.C.* § 153(a); *but see Wilcox*, 145 S. Ct. at 1415. *Id.*

117. Only two (2) exceptions to the President's removal power exist: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020); *see also Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).

118. These exceptions do not apply here because Board Members "wield substantial executive power," and ALJs possess vast "administrative authority." *Harris*, 160 F.4th at 1251-1254 (explaining the substantial executive power wielded by Board members); *Aunt Bertha*, 2024

[6] As of the date of this Complaint, the Board has three (3) members: (a) Defendant Prouty, whose term expires on August 27, 2026; (b) Defendant Murphy, whose term expires on December 16, 2027; and (c) Defendant Mayer, whose term expires on December 16, 2029. .

WL 420383, at *2; *Energy Transfer, LP*, 742 F. Supp. 3d at 758-759; *SpaceX*, 741 F. Supp. 3d at 636-637.

119. The Board exerts executive authority:

> *First*, the NLRB possess broad rulemaking authority. Section 6 of the NLRA empowers the agency to promulgate such rules and regulations as may be necessary to carry out the provisions of the statute…Invoking that power, the NLRB has promulgated rules governing collective bargaining…[T]he power to promulgate binding rules fleshing out major federal statutes exceeds the powers that *Humphrey's Executor* deemed to be quasi-legislative or quasi-judicial. Needless to say, it is also a quintessential executive power under current constitutional standards.
>
> ***
>
> *Second*, the NLRB conducts administrative adjudications that are nothing like the model of adjudication that *Humphrey's Executor* treated as quasi-judicial…[The NLRB] is tasked with developing and applying national labor policy. So, it may announce new principles in an adjudicative proceeding. Moreover, policy considerations drive NLRB adjudications.
>
> ***
>
> *Third*, the NLRB may award substantially broader remedies than the FTC could in 1935…The NLRB…may award various forms of affirmative relief. Upon finding an unfair labor practice, it may issue not only a cease-and-desist order, but also one requiring the offending employer or union to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of the NLRA…And it sometimes includes the power to compel employers to read NLRB-composed admissions of liability, a remedy that [has been] likened to the practices of Joseph Stalin and Mao Zedong.
>
> ***
>
> *Fourth*, the NLRB has broader litigating authority than the FTC did in 1935…NLRB remedial orders may be much broader than those of the FTC in 1935. Moreover, the NLRB has litigating authority to seek interim relief in district courts.
>
> ***

> *Finally*, the NLRB exercises substantial executive power in administering section 9 of the NLRA, which governs the determination of appropriate units for collective bargaining and the conduct of union elections…
>
> …Because the NLRB's rulemaking, adjudicatory, remedial, enforcement, and election-administration powers are not solely quasi-legislative or quasi-judicial, the agency falls well outside the *Humphrey's Executor* exception.

*Harris*, 160 F.4th at 1251-1254 (internal citations and quotations omitted).

120. The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of – indeed, under our constitutional structure they must be exercises of the "executive Power." *Seila Law LLC*, 591 U.S. at 197, n.2.

121. But for these unlawful removal restrictions, Board Members would be subject to removal by the President. *Aunt Bertha*, 2024 WL 420383, at *2; *Energy Transfer, LP*, 742 F. Supp. 3d at 758-759; *SpaceX*, 741 F. Supp. 3d at 636-637; *see Wilcox*, 145 S. Ct at 1415.

122. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now" injury ripe for judicial intervention. *Id.* at *6, *citing Axon Enters., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

123. Nexstar is entitled to declaratory relief sufficient to ensure that the administrative standards to which Nexstar is subject will be enforced only by a constitutional agency accountable to the Executive. *Id.* at *5, *citing Free Enter. Fund v. PCAOB*, 561 U.S. 477, 508, 513 (2010).

124. Without interim injunctive relief, Nexstar will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

125. Nexstar bears a strong likelihood of success on the merits for the reasons articulated above.

126. If the NLRB is not enjoined from proceeding against Nexstar in the administrative proceeding, Nexstar will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

127. Balancing of the equities tips in Nexstar's favor because, should the administrative proceeding move forward, Nexstar will lose its right not to undergo an unconstitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 175; *see Robinson Freight Lines*, 117 NLRB 1483, 1485 (NLRB 1957) ("the Board alone is vested with lawful discretion to determine a proceeding, when once instituted, may be abandoned"); *see further NLRB v. UFCW Local 23*, 484 U.S. 112, 121 (1987) ("Once a hearing on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement").

128. It is in the public interest to remedy the unconstitutional removal procedures here to protect the constitutional rights of all Americans.

**COUNT THREE**
**ADMINISTRATIVE LAW JUDGES ARE UNCONSTITUTIONALLY ISOLATED FROM REMOVAL**

129. Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

130. ALJs function as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also SpaceX*, 741 F. Supp. at 637; *see further Westrock Servs., Inc.*, 366 NLRB No. 157, at *1 (NLRB Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers").

131. Inferior officers are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Energy*

*Transfer LP*, 2024 WL 3571494, at *2, *citing Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022), *aff'd on other grounds* 144 S. Ct. 2117 (2024).

132. The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection Board]." 5 *U.S.C.* § 7521(a).

133. Members of the Merit Systems Protection Board ("MSPB") are removable only for "inefficiency, neglect, of duty, or malfeasance in office." 5 *U.S.C.* § 1202(d).

134. "The MSPB likewise has more executive powers than the ones that *Humphrey's Executor* deemed to be quasi-legislative or quasi-judicial." *Harris*, 160 F.4th at 1254.

135. More particularly:

> Start with rulemaking. The [Civil Service Reform Act ("CSRA")] empowers the MSPB to promulgate regulations for the performance of its functions…Section 7521 [of the CSRA] prohibits the removal of ALJs without a prior MSPB determination of good cause…[T]hese grants of rulemaking power authorize the MSPB to decide, with the force and effect of law, what constitutes a prohibited removal. In other words, they permit the MSPB to define by regulation what primary conduct section 7521 prohibits, not simply to prescribe rules for the adjudication of disputes under that provision…[T]he existence of at least some substantive rulemaking power counts as a distinction of *Humphrey's Executor*…
>
> ***
>
> …As for adjudication, the MSPB may be less aggressive than the NLRB in naked appeals to shifting policy preferences, but its adjudicatory powers still exceed what *Humphrey's Executor* deemed to be quasi-judicial. This is true on at least three different dimensions – finality, breadth of jurisdiction, and breadth of remedial authority.
>
> *Finality*. The power to unilaterally issue final decisions is a significant exercise of executive power that was not present in *Humphrey's Executor*…[T]he MSPB may take final action on any matter within the jurisdiction of that Board, and also may order any Federal agency or employee to comply with any of its orders.

> Aggrieved employees may obtain judicial review of final MSPB decisions, but the decisions remain effective unless and until a court of appeals sets them aside.
>
> *Breadth of jurisdiction*. …[T]he MSPB is more a of a jack-of-all-trades. In determining prohibited personnel practices, it must administer portions of [Title VII of the Civil Rights Act of 1964], the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Rehabilitation Act, and the Whistleblower Act…the Uniformed Services Employment and Reemployment Rights Act, [] the Veterans Employment Opportunities Act…the Hatch Act, the Freedom of Information Act, and various other statutes within the prosecutorial authority of the Special Counsel. Finally, it must decide whether employing agencies have meted out appropriate discipline…Thus, it cannot be plausibly described as quasi-judicial. Likewise, it cannot be fairly characterized as involving no policy except the policy of the law.
>
> *Breadth of remedial authority*. When it finds a legal violation, the MSPB can do far more than simply order the offending agency to cease and desist. For unwarranted employee discipline, the MPSB may order relief including reinstatement, backpay, and attorney's fees. For prohibited personnel practices, it may order corrective action that includes reinstatement, backpay, compensatory and consequential damages, medical and other costs, travel expenses, attorney's fees, expert witness fees, and interest…All of this sharply distinguishes *Humphrey's Executor*. The power to award legal and equitable relief in administrative adjudications is an executive power that was not at issue there. Moreover, if the power to seek daunting monetary penalties in court is also such a power, then so to is the power to impose such penalties unilaterally…
>
> Finally, consider litigating authority, another executive power not addressed in *Humphrey's Executor*. The MSPB's power to appear in any civil action brought in connection with any function carried out by the Board contemplates MPSB control of any district-court litigation brought by or against the agency. And the MSPB is sometimes the proper respondent when its orders are challenged in a court of appeals…Purely adjudicatory agencies – ones designed to be an independent adjudicator with no policymaking authority – are generally not proper parties to defend their decisions on review, just as district judges are generally not proper parties to defend their decisions on appeal.
>
> In sum, the MSPB has at least some substantive rulemaking power; it administers a host of wide-ranging federal statutes; it awards

> various kinds of affirmative, compensatory, and punitive relief; and it litigates in court on its own behalf. Taken together, these powers well exceed the powers deemed to be quasi-legislative or quasi-judicial in *Humphrey's Executor*…For those reasons, Congress may not restrict the President's ability to remove MSPB remembers.

*Id.* at 1254- 1256 (internal citations and quotations omitted).

136. "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

137. As ALJs can only be removed "for good cause" and the MSPB members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated from the President by at least two layers of for-cause removal protections. *Energy Transfer LP*, 742 F. Supp. 3d at 758-759, *citing* 5 *U.S.C.* § 7521(a) and 5 *U.S.C.* § 1202(d).

138. ALJs are insulated from the President by at least two layers of for-cause removal protections. *Id.* As the Supreme Court has held, "the added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's review…[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enters. Fund*, 561 U.S. at 495-496.

139. But for these unlawful removal restrictions, ALJs would be subject to removal by the President. *Harris*, 160 F.4th at 1254-1256.

140. The existence of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution.

141. Again, being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191; *SpaceX*, 741 F. Supp. 3d at 640; *Energy Transfer, LP*, 742 F. Supp. 3d at 760-761.

142. Nexstar is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Nexstar is] subject will be enforced by a constitutional agency accountable to the Executive." *Free Enters. Fund.*, 561 U.S. at 513.

143. Without interim injunctive relief, Nexstar will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

144. Nexstar bears a strong likelihood of success on the merits for the reasons articulated above.

145. If the NLRB is not enjoined from proceeding against Nexstar in the underlying administrative proceeding, Nexstar will be irreparably harmed because it will have endured a proceeding led by officers who are unconstitutionally insulated from removal by the President.

146. Balancing of the equities tips in Nexstar's favor because, should the NLRB administrative proceeding move forward, Nexstar will lose its right not to undergo an unconstitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 191; *see Robinson Freight Lines*, 117 NLRB 1483, 1485 (NLRB 1957) ("the Board alone is vested with lawful discretion to determine a proceeding, when once instituted, may be abandoned"); *see further NLRB v. UFCW Local 23*, 484 U.S. 112, 121 (1987) ("Once a hearing on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement").

147. It is in the public interest to remedy the unconstitutional removal procedures here to protect the constitutional rights of all Americans.

**COUNT FOUR**
**THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWERS VIOLATES ARTICLE III, § 1 OF THE CONSTITUTION**

148. Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

149. The NLRB is an executive agency. 29 *U.S.C.* § 153(a). It is not part of the judiciary or legislature.

150. Article III of the Constitution establishes that judicial power belongs exclusively to the Judiciary. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011).

151. Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power." *Id.* at 483, *citing U.S. v. Nixon*, 418 U.S. 683, 704 (1974), *internal citations omitted*.

152. As established in Count I, *infra*, the NLRB has taken an adjudicatory role by expanding its authority to award legal remedies (*i.e.*, money damages) under the guise of a 29 *U.S.C.* 160(c) remedy and making itself the body determining that award. *See Thryv, Inc.*, 372 NLRB No. 22, at *13 (NLRB Dec. 13, 2022); *but see Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 198 (1941) (the NLRB "does not exist for the adjudication of private rights"); *see further Loper Bright Enter. v. Raimondo*, 144 S. Ct. at, 2258 (, *quoting U.S. v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 544 (1940)) ("'[t]he interpretation of the meaning of statutes, as applied to justiciable controversies,' [is] 'exclusively a judicial function'").

153. The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the Judiciary, not the Executive.

154. By determining the amount of "consequential damages" in the underlying administrative proceeding, Defendants, as executives, usurp the role of the Judiciary.

155. By articulating a new "novel" and/or "draconian" interpretation of 29 *U.S.C.* § 160(c), Defendants, as executives, act in a quasi-legislative role. 29 *U.S.C.* § 160(c) (the NLR is authorized to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without backpay"); *see Thryv, Inc.*, 102 F.4th at 733, 737; *c.f. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 286, n.5 (2022), *citing* 42 *U.S.C.* § 2000e-5(g)(1) (equating the power to "order appropriate affirmative action" with the equitable powers of the Equal Employment Opportunity Commission).

156. By promulgating this new remedy, the NLRB created its own law and its own method of determining a remedy, thus exercising executive, legislative, and judicial powers at once. *See Loper Bright Enter.*, 144 S. Ct. at 2258 ("'[t]he interpretation of the meaning of statutes, as applied to judiciable controversies,' [is] 'exclusively a judicial function'"). *(internal citations and quotations omitted)*.

157. "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Penn.*, 579 U.S. 1, 8 (2016); *see Calder v. Bull*, 3 U.S. 385, 388 (1798) (it would be "against all reason" to "entrust a Legislature" with the power to "mak[e] a man a Judge in his own case," and therefore "it cannot be presumed that [the people] have done it").

158. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191; *SpaceX*, 741 F. Supp. 3d at 640; *Energy Transfer, LP*, 742 F. Supp. 3d at 760-761.

159. Nexstar is entitled to declaratory relief to ensure that its due process rights are not violated.

160. Without interim injunctive relief, Nexstar will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

161. Nexstar has a strong likelihood of success on the merits for the reasons articulated above.

162. If the NLRB is not enjoined from proceeding against Nexstar in the underling administrative proceeding, Nexstar will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of separation of powers.

163. A balancing of the equities tips in Nexstar's favor because, should the underlying administrative proceeding move forward, Nexstar will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 179, 192; *see Robinson Freight Lines*, 117 NLRB 1483, 1485 (NLRB 1957) ("the Board alone is vested with lawful discretion to determine a proceeding, when once instituted, may be abandoned"); *see further NLRB v. UFCW Local 23*, 484 U.S. 112, 121 (1987) ("Once a hearing on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement").

## PRAYER FOR RELIEF

**WHEREFORE**, Nexstar herby requests that this Honorable Court order the following relief and enter a judgment:

A. Declaring that:

a. The practice and/or policy of the NLRB to seek "consequential damages" as remedies for unfair labor practices in matters proceeding before an Administrative Law Judge violates the Seventh Amendment's guarantee of trial by jury for legal claims; and

b. The practice and/or policy outlined in *Thryv, Inc.*, 372 NLRB No. 22 (2022), *enf. denied on other grounds* 102 F.4th 727 (5th Cir. 2024)violates the Seventh Amendment on the same grounds; or, in the alternative, declaring that said practice and/or policy exceeds the statutory authority conferred by 29 *U.S.C.* § 160(c) ; and

c. The continued reliance on or application of the policy outlined in in *Thryv, Inc.*, 372 NLRB No. 22 (2022), *enf. denied on other grounds* 102 F.4th 727 (5th Cir. 2024) violates the Seventh Amendment on the same grounds; or, in the alternative, that same; exceeds the statutory authority conferred by 29 *U.S.C.* § 160(c) and

d. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 *U.S.C.* § 7521(a), are unconstitutional; and

e. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of Board Members, including 29 *U.S.C.* § 153(a), are unconstitutional.

B. Preliminarily enjoining Defendants from subjecting Nexstar to administrative proceedings in which an unconstitutional remedy is sought pending final resolution of this action, including without limitation the hearings set for April 21, 2026 in ULPs No. 27-CA-340984 27-CA-3409990, and 27-CA-361721;

C. Permanently enjoining Defendants from implementing or carrying out any policy and/or practice of unconstitutionally seeking legal remedies without a trial by jury;

D. Preliminarily enjoining Defendants from subjecting Nexstar to unconstitutionally constructed administrative proceedings pending the final resolution of this action, including without limitation the hearings set for April 21, 2026 in ULPs No. 27-CA-340984, 27-CA-3409990, and 27-CA-361721;

E. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

F. Awarding Nexstar its costs and expenses incurred in bringing this action, including without limitation, reasonable attorneys' fees; and

G. Awarding such other and further relief as this Court deems just, equitable, and proper.

Dated: February 23, 2026

Respectfully submitted,

/s/ *Hunter Johnson*

Hunter Johnson, Esq., Bar no.: 10753900
Constangy, Brooks, Smith & Prophete, LLP
100 Crescent Court, Suite 100
Dallas, TX 75201
(214) 646-3421
hjohnson@constangy.com

*Attorneys for Plaintiff Nexstar Media Group, Inc.*
*On Behalf of Its Denver Hub*

Docusign Envelope ID: 1536E102-06E9-4EAA-8172-D9CE2C2A87C3


**VERIFICATION OF COMPLAINT**

I, CHARLES PAUTSCH, Associate General Counsel and Vice President of Labor Relations for Plaintiff Nexstar Media Group, Inc., being of full age, upon my oath, do hereby certify that I have reviewed this Verified Complaint and, upon information and belief, hereby submit that the allegations of fact contained herein are true to the best of my knowledge and belief. I understand that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

Signed by:
B56394C62476430...

CHARLES PAUTSCH

Dated: February 23, 2026